Denio, Ch. J.
There was no well-founded objection to the testimony of Hodge, against the reception of which the defendant excepted. • It was a material fact, if it was a fact, that the defendant was the father of the child of which the prosecutrix was enciente. It would afford a motive on 'his part for the commission of the offence imputed to him in the indictment, as that would tend to shield him from the probable consequences of his misconduct. The woman had sworn positively that the defendant was the father; but her testimony on that point was much shaken by the prior statements which she admitted she had made, and which were otherwise proved, which charged Hodge as the father. These statements of hers, though well calculated to ‘ impair her credit, had no legal tendency to implicate Hodge, for they were not made on oath, but were mere hearsay. If this were all the foundation which had been laid, it would not have been competent for the prosecution to have examined Hodge, to establish the fact that he was not the father. There was not, thus far, any more occasion for exonerating him than any other person, and the testimony would have been idle, and it might have been mischievous. But the defendant had given some evidence, by the cross-examination of one of the witnesses for the prosecution, tending, in a very slight manner it is true, to show an intercourse with Hodge. Standing alone, it would not have amounted to anything, but it indicated the line of defence which the accused designed to pursue. The court, before deciding upon the competency of the question pnt to Hodge, inquired of the defendant’s legal advisers whether they intended to claim that there had been an illegal intercourse between the prosecutrix and Hodge, and they avowed that such was their intention. . The question *527 whether Hodge was the father of the child henceforth became one of. the subordinate issues in the case, and the question to Hodge, bearing directly and conclusively upon that point, became not only competent, but was quite important. It is not a sufficient answer to' this view that the testimony by which the defendant claimed to implicate Hodge was insufficient for that purpose. It had been given by the defendant, and had been received without objection. It was before the jury, and might have been the subject of comment by the defendant’s counsel. Indeed, they gave notice, in substance, that they should rely upon it to show that Hodge, and not the defendant, might have been the father, and thus to take away or diminish the probability that the defendant would take steps to remove the consequences of the intercourse. If the declaration of the counsel, in their answer to the court, is to be understood as a statement that they should claim that there had been intercourse with Hodge upon other evidence to be after-wards given by the defense, the denial of Hodge would still have been competent; for it was within the discretion of the court to prescribe the order of the testimony, and there would be no error in allowing a witness to rebut, by way of anticipation, a defense which the other party avokved he should set up and attempt to prove. In either view, error cannot be predicated on this ruling.
The position that an acquittal should have been directed on the ground that the female was an accomplice and was not corroborated in her testimony, was not urged in the argument, though taken on the trial. It could not, however, have been sustained. She did not stand legally in the situation of an accomplice; for although she no doubt participated in the moral offence imputed^ to the defendant, she could not have been indicted for that offence.. The law regards her rather as the victim than the perpetrator of the crime. (Rex v. Hargrave, 5 C. & Payne, 170; Rex v. Boyes, 1 Best & Smith, 311; 101 Eng. C. L. 309.) But if *528 she had been an accomplice, in the strict sense of that term, the direction asked for could not properly have been given. Although it is not generally discreet for a jury to convict upon the unsupported testimony of an accomplice, it is not the law that a conviction upon such testimony can in no case be had. (The People v. Costello, 1 Denio, 83, and cases cited by Beardsley, J.; The People v. Dyle, 21 N. Y. R. 578; Rex v. Boyes, supra.)
The point most earnestly insisted on before us v/as, that the jury should have been instructed to acquit the defendant on account of the false testimony which the principal witness admitted she had given upon her examination before the magistrates. Upon this position there is a case which looks like an authority favorable to the defendant. In Dunlop v. Patterson (5 Cow. 243), a judgment of the court of common pleas, in a civil case, was reversed because a witness for the plaintiff, who alone proved the case against the defendant, had testified in a former suit, upon the material ■ question involved in the issue, directly contrary to the testimony which he gave in that case. A motion for a non-suit was denied, and the jury were charged that the witness was competent, and that the jury might give that weight to his testimony which they thought it demanded. The opinion of the supreme court on reversing the judgment, delivered by Mr. Justice Woodworth, contains several expressions which indicate that in the opinion of the learned judge it was a conclusion of law that a witness so impeached could not be credited, and that the duty of the court was to direct that his testimony should be wholly disregarded; while there are other parts which convey the idea that the error was in not sufficiently cautioning the jury against the dangerous character of such testimony. It is said, for instance, that the court ought to have charged the jury that the testimony of the witness was so strongly impeached as to justify them in disregarding it altogether; that the unsupported testimony of a *529 single witness, who swore at one time in direct contravention to the testimony given by him at another, in relation to the same transaction, was not entitled to credit and ought not to be regarded. In another place, it is said that no reason whatever was assigned by the witness for his prevarication and disregard for truth, and that he was not therefore a credible witness unless supported as to the material fact which he attempted to establish. It is to be implied from this that if he had explained his self-contradiction in some reconcilable way, or if he had been supported to some extent as to the material fact, his testimony might then have been taken into consideration and estimated by the jury at what it should have been considered, worth. And there is, moreover-, an implication that if a more cautious charge had been given, and the testimony had still been left to the jury, there would have been no error in law. This, I think, leaves the question of law, as to the character of such testimony, in a very unsatisfactory position. The true question is whether, when it appears that the witness has sworn differently upon the same point un a former occasion, he is to be pronounced by the judge to be incompetent, and his testimony stricken out and wholly excluded from consideration, as though he had been convicted of a crime rendering him incompetent to testify as a witness; or whether the testimony remains in the case, to be considered by the jury in connection with the other evidence, under such prudential instructions as may be given by the court, and subject to the determination of the court having a jurisdiction to grant new trials in cases of verdicts against evidence. In my opinion, the latter is the correct principle of law. ' «
If the testimony of such a witness were by law unfit to be considered, no amount of consideration, or of intrinsic probability or coherence of circumstances, or explanation of the former testimony would carry it to the deliberations of the jury. But the contrary of this, as I have said, is *530 clearly implied by the opinion we are considering. That case can, I think, only be sustained, if at all, by considering the reversal as based upon an error of the court of common pleas, in its instruction upon the weight to be attached to the evidence of the witness who was' impeached by his former testimony. It was not decided that such testimony could not be considered at all, but only that the jury would be justified, that is, that they had the right to disregard it. under the circumstances of the case. The court could not go further without usurping the domain of the jury; for to them the law has entrusted the right of determining upon the credibility of witnesses. I quite agree that it is the duty of the court, in such cases, to be sedulous in guarding the jury agáinst hastily or inconsiderately acting upon the testimony of the witness, but it has no right to direct an acquittal on^such grounds, or to in struct them as matter of law wholly to disregard the testi many; or, what is the same thing, entirely to withdraw it from their consideration. And I am not of opinion that error can be predicated upon the greater or less cogency or earnestness with which the necessary caution may be given, provided their attention is fairly called to the dis crediting circumstance.' It is matter of common experience and observation that when the testimony of a witness con tradiets what he has .formerly asserted, it detracts from the credit to be given him, and if such former statement was made in a deliberate manner, and especially if it was under the solemnity of an oath, and in a case where the same question of fact was involved and was material, the degree of credit attributable to his former statement is proportionately diminished; or it may be wholly destroyed if the jury so determine, I think the charge in the present case was unexceptionable • in point of law. The court called the attention -of the jury to the sworn contradiction of herself by the principal witness, and said that it was a strong circumstance tending to discredit her testimony on that trial- *531 but that the amount of credit due to that testimony was a question for them to determine; adding that if a reasonable doubt arose in their minds it was their duty to acquit the defendant. If after that charge there was an improper verdict it was the fault of .the jury and not of the court. If the request to charge further had been acceded to, the direction would have been, in effect, the ordering a verdict of acquittal. Such an order the court had no right to make.
I am for affirming the judgment of the supremé court.
Ingraham, J.
The main question in this case is whether
Mrs. Guyer, the person who was the complainant, did not, by her admissions of what she testified to on a former trial, become so impeached as to make it the duty of the court to instruct the jury “ that she was unworthy of credit, and unless her testimony was corroborated by other evidence, it was unsafe to convict the prisoner,”
The facts as testified to by her op this trial, and as to Avhich' she admitted she had sworn falsely on a former trial, were in relation to the paternity of the child. These facts were directly in issue in the first proceeding, but on this trial were not necessary or material to prove the case of the People, but were only admissible for the purpose of shoAving motive on the part of the prisoner in advising the use of means to produce an abortion.
. In Dunlop v. Patterson (5 Cowen, 243), "the rule Avas adopted as a correct one that where the evidence was material to the issue and the witness admitted he had sworn falsely on a former trial, the court should so instruct the jury. It is very clear that a witness who admits upon the trial that he has deliberately sworn to a statement in direct contradiction to that given by him upon the trial, can furnish nó satisfactory evidence upon which either life, liberty or property should be taken away, unless his testimony is so corroborated as to repiove the presumptions against him. *532 In that case, however, the testimony was material in both actions; and unless it be held that proof of motive was material in this case, and that the former statement of Mrs. Guyer that the prisoner was the father of the child tended to prove such motive, the evidence in this ease would not be of that character. This evidence to prove who was the father of the child, can scarcely be said to be material to prove that the prisoner had been guilty of the crime charged, viz: aiding or advising the producing of an abortion. It was collateral to proof of the offence to show that the prisoner was such father, but it was not necessary to make out the offence either that such should be the fact or to prove it on the trial if it was so. This contradiction of the witness by herself on a former occasion should have greatly discredited her with the jury, but I think was properly left to them, and there is no fuie of law which authorized the court to take it from them.
Mor does the suggestion that Mrs. Guyer was an accomplice, aid' the prisoner in rejecting her testimony. This point was expressly held in The People v. Costello (1 Denio, 83), and a charge that the jury could convict on the testimony of an accomplice, uncorroborated, was sustained. This decision was approved in this court by Bowen, J., in Haskins v. The People (16 N. Y. 344), although this rule was not necessarily involved in that case.
Such I suppose to be the true rule; and while a jury should be cautioned against giving credit hastily to the uncorroborated evidence of an accomplice, still if such evidence furnishes to them satisfactory proof of guilt, and they so find- by their verdict, the want of corroborating evidence is no ground for granting a new trial.
The objection to admitting Dwight Hodge to testify that he never had sexual intercourse with the witness Guyer, was not well taken, Mrs. Guyer had herself proved on the trial that he had not had such intercourse, and that her statement to that effect was untrue. The introduction of *533 such evidence, afterwards, tended to confirm the testimony of the witness on this trial and not to impeach her. The judgment should be affirmed.
All the judges concurring, judgment affirmed.